<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>GREGORY DEAS & KYSHON WILLIAMS | No. 23cr353 (EP)<br><br>**OPINION** |

**PADIN**, **District Judge.**

On July 11, 2022, Defendants Gregory Deas and Kyshon Williams were arrested after a warrantless stop and search of Deas's car uncovered drugs and money. From this search and a later search of Deas's home pursuant to a search warrant, Deas was charged with possession with intent to distribute fentanyl in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), and both Deas and Williams were charged with distribution and possession with intent to distribute fentanyl in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). D.E. 28 ("Indictment").

The Court previously denied Defendants' respective motions to suppress, as well as Williams's motion to sever. D.E. 72 ("Prior Opinion" or "Prior Op."). Presently before the Court is the Government's pretrial motion seeking: (1) admission of certain recordings[1] of Deas either as intrinsic to the charged crimes or under Federal Rule of Evidence 404(b); (2) for the Recorded Conversations to be authenticated through the testimony of law enforcement officers; and (3) a ruling that Williams's prior conviction is admissible under Federal Rule of Evidence 609 as impeachment evidence should Williams choose to testify. D.E. 118 ("Motion" or "Mot."). Both Deas and Williams oppose the Motion. D.Es. 119 ("Deas Opposition" or "Deas Opp'n") & 121 ("Williams Opposition" or "Williams Opp'n"). The Government replies to both. D.E. 122

---

[1] For ease of reference, the Court adopts the Government's terminology for the recordings attached to its Motion and refers to them as the "Recorded Conversations."

("Reply"). For the reasons explained below, the Court will **GRANT in part** and **DEFER in part** its decision on the Government's Motion.

I.  BACKGROUND[2]

  A.  **The Confidential Source and Law Enforcement's Investigation**

As described in detail in the Prior Opinion, in June 2022, an individual approached law enforcement to become a confidential source ("CS"). Prior Op. at 2 (citing D.E. 47-1, Ex. C ("Amendola Affidavit")[3] ¶ 8). The CS told law enforcement that he feared for his life because he owed Deas, his narcotics supplier, approximately $30,000. *Id.* (citing D.E. 48-1, Ex. B at US000431). Law enforcement agreed to pay the CS's $30,000 debt in exchange for the CS's cooperation, which included the CS wearing an audio and video recording device when he next met with Deas. Amendola Affidavit ¶ 10.

In connection with law enforcement's investigation, the CS conducted three recorded meetings with Deas in June 2022, during which Deas and the CS discuss various aspects of Deas's narcotics business and specific stamps on the bricks of heroin and fentanyl that Deas sells.

*First*, on June 2, 2022, Deas went to the CS's home to collect the $30,000. Amendola Affidavit ¶ 11. While the meeting lasted over twenty minutes, the Government seeks to introduce about four minutes of recordings from the meeting. Mot. at 4 (citing D.E. 118, Exs. A1 & A2). During these clips, the CS and Deas discuss different stamps of heroin, including "Amber Alert,"

---

[2] Aside from citations to the Recorded Conversations, the Government does not provide citations for any facts in its Statement of Facts section. Because Defendants do not dispute the accuracy of the Government's Statement of Facts, the Court will assume the Government accurately represents law enforcement's investigation, including the contents of the search of Deas's residence. The Court has reviewed previous filings in this action and has provided citations to underlying documents when possible. For those facts the Court cannot easily and independently verify, it cites to the Government's Motion.

[3] The Amendola Affidavit is a search warrant application completed by Federal Bureau of Investigation Special Agent Matthew Amendola on July 11, 2022, to search Deas's home.

"Flintstone," and "Bitcoin." *See* Ex. A1 at 0:29-1:06; Ex. A2 at 0:30-1:00. At one point, the CS calls "Bitcoin" "some bullshit," and Deas replies, "You know what's weird? Down in the hood, that's what they love," and then laughs. Ex. A1 at 0:44-0:55.

*Second*, on June 15, 2022, the CS recorded another in-person conversation between himself and Deas that lasted approximately fifteen minutes. Mot. at 4 (citing D.E. 118, Exs. B1 & B2). The Government seeks to introduce under five minutes of content from this meeting. *Id.* These recordings show Deas telling the CS that his drug suppliers are heading out of town for an extended period, and therefore, they "gotta load [him] up 'til the fucking end of July." Ex. B2 at 0:14-0:22. Deas tells the CS he wanted his supplier to be clear about how long the supplier expected to be out of town so Deas could tell the supplier what he "needed." *Id.* at 0:55-1:10. Deas guesses that because the order he placed was so large, his supplier might need to make two trips to deliver the narcotics. *Id.* at 1:33-1:45.

*Third*, on June 17, 2022, Deas returned to the CS's home, where the two had another fifteen minute meeting. Mot. at 4-5 (citing D.E. 118, Ex. C). The Government seeks to introduce a two minute clip from this meeting during which Deas explains how he gets stressed when his supply runs low, and why he placed such a large order "in this situation"—*i.e.*, when his supplier was leaving town for an extended period of time. Ex. C at 1:01-1:20.

On June 17, 2022, law enforcement also obtained a search warrant, which allowed them to obtain prospective GPS location data from Deas's phone and for law enforcement to install and use a pen register and trap and trace device on his phone. Prior Op. at 5.

**B.     The July 11, 2022 Arrest**

Just after 2:00 PM on July 11, 2022, law enforcement, using the pen trap and trace on Deas's cell phone, observed Deas driving towards Williams's residence, and consequently surveilled the area. Amendola Affidavit ¶ 18. Law enforcement saw Williams enter a silver Nissan

3

Rogue near his home. *Id.* A few minutes later, Deas arrived in a Kia Optima and parked close to Williams' car. *Id.* Williams then exited the Nissan and entered the Kia's front passenger seat, carrying a bag. Prior Op. at 6 (citations omitted). At 2:49 PM, with both men still inside the Kia, law enforcement boxed in the Kia from the front and rear and directed Deas and Williams to exit the Kia. Amendola Affidavit ¶ 19.

As Deas exited the Kia, law enforcement claims that they saw, in plain view, the bag that Williams had carried into the car on the front driver's side floorboard, directly in front of where Deas was sitting. Amendola Affidavit ¶ 19. Law enforcement also claims they saw on the passenger seat floorboard (*i.e.*, in front of where Williams was sitting), a blue bag containing numerous wrapped packages, which the officers (based on their training and prior experience) "immediately recognized" to be bricks of heroin. Prior Op. at 6 (citations omitted).

However, law enforcement did not search the car immediately after claiming to see the drugs; instead, they opted to request a police canine unit. *Id.* A narcotics-trained canine arrived and alerted law enforcement to the presence of narcotics in the vehicle. Amendola Affidavit ¶ 19. Officers then searched the car. The blue bag in front of Williams's seat contained around 100 bricks of heroin, and the bag in front of where Deas sat contained about $30,000. *Id.* The bricks in the bag contained two different stamps: "Detour" and "Amber Alert." Mot. at 6. The officers also seized about $5,000 in cash from the center console and cell phones from both the front driver's and passenger's seats. Prior Op. at 6. Deas and Williams were then arrested. *Id.*

Later that day, law enforcement obtained and executed a search warrant for Deas's residence. *Id.* During that search, law enforcement discovered and seized over 4,500 bricks of heroin infused with fentanyl, a large quantity of cocaine, and nearly $287,000 in cash. *Id.* The

4

bricks found in Deas's home had stamps including "Amber Alert," "Bitcoin," and "The Flintstones." Mot. at 7.

**C.     The Charges**

On May 4, 2023, a federal grand jury returned a two-count indictment against Defendants. Indictment. Count One charges Deas with possession with intent to distribute fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). *Id.* Count Two charges both Williams and Deas with distribution and possession with intent to distribute fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). *Id.*

## II.    ANALYSIS

**A.     The Recorded Conversations**

The Government argues that the Recorded Conversations are admissible as intrinsic evidence to the charges against Deas, or in the alternative, under Federal Rule of Evidence 404(b). It seeks only to admit about eleven minutes of the recordings between Deas and the CS out of fifty minutes of content. Mot. at 7. As explained below, the Court finds the Recorded Conversations intrinsic to the charged offenses, and therefore, will **GRANT** the Government's Motion.

*1.     The Recorded Conversations are intrinsic to the Indictment*

There are two "narrow categories" of intrinsic evidence in the Third Circuit: (1) evidence that directly proves the charged offense and (2) evidence that constitutes "uncharged acts performed contemporaneously with the charged crime if they facilitate the commission of the charged crime." *United States v. Green*, 617 F.3d 233, 248-49 (3d Cir. 2010) (citations omitted). Intrinsic evidence "aids understanding by completing the story of the charged crime," *id.* (citation modified), and "helps the factfinder to 'evaluate all of the circumstances under which the defendant acted,'" *id.* at 245 (quoting *United States v. Smith*, 930 F.2d 1081, 1087 (5th Cir. 1991)). The Third Circuit has recognized that "the nature and scope of the evidence able to be deemed intrinsic will

5

vary with the charged offense." *United States v. Williams*, 974 F.3d 320, 357 (3d Cir. 2020). Intrinsic evidence is not subject to a Rule 404(b) analysis. *Green*, 617 F.3d at 245; *United States v. Gibbs*, 190 F.3d 188, 217 (3d Cir. 1999)).

The Government asserts that the Recorded Conversations are intrinsic to the Indictment because they show Deas discussing in mid-June (1) plans to obtain a large supply of drugs to last him through the end of July and (2) specific brands/stamps of heroin and law enforcement recovered these very drugs from the Kia and from Deas's residence in July 2022. Mot. at 9. In other words, "[b]ecause the Recorded Conversations depict Deas discussing the supply of the drugs that are the subject of Count One of the Indictment," the Recorded Conversations are intrinsic to that offense. Reply at 2; *see also* Mot. at 9 (citing *United States v. Cox*, Crim. No. 11-99, 2011 WL 4906672, at *3 (D.N.J. Oct. 14, 2011) where this Court found emails that the defendant exchanged with a cooperating witness specifically regarding the charged distributions of child pornography intrinsic to that offense).

In response, Deas argues that the Recorded Conversations do not directly prove the charged conduct and are not contemporaneous with the charged offenses because the Recorded Conversations occurred several weeks prior to the offense. Opp'n at 2. According to Deas, the Recorded Conversations are "mere narrative about prior dealings and alleged future plans." *Id.*

The Court disagrees with Deas. The Recorded Conversations are intrinsic to Count One of the Indictment because the Recorded Conversations appear to show Deas discussing the same narcotics that law enforcement recovered from the Kia and from his residence on July 11, 2022. During a recording from June 15, 2022, Deas tells the CS that his supplier would be heading out of town and would not be back until the end of July, so they "gotta load [him] up 'til the fucking *end of July*." Ex. B2 at 0:14-0:22 (emphasis added). The Court agrees with the Government that

6

the fact the Recorded Conversations took place "weeks before the charged offense is inconsequential when those conversations discussed events that would occur over a period of at least 1.5 months." Reply at 2 (citation modified). Because Deas makes clear in the Recorded Conversations that he was obtaining a supply to last him through the *end* of July, drugs recovered from his home and the Kia during the middle of July are well within the bounds to be considered contemporaneous and to directly prove the charged offense.

In other videos, Deas and the CS mention different stamps on the bricks that Deas supplies, including "Bitcoin," "Amber Alert," and "Flintstone," *see* Ex. A1 at 0:29-1:06, and that Deas was placing an order so large his supplier would need to make two trips, Ex. B2 at 1:33-1:45. The Recorded Conversations thus provide context as to the 4,500 bricks of narcotics and nearly $287,000 in cash recovered in mid-July from Deas's home as well as the cash and bricks found in the Kia.[4] Because the Recorded Conversations provide the factfinder with the "complete the story of the crime," *Green*, 617 F.3d at 245-46 (citing *United States v. Wright*, 392 F.3d 1269, 1276 (11th Cir. 2004)), they are admissible as intrinsic to the Indictment. *See United States v. Marrero*, 643 F. App'x 233, 238 (3d Cir. 2016) (affirming the admission of a recording discussing a drug transaction one week prior to the charged offense as intrinsic evidence); *United States v. Mainor*, No. 12-85, 2014 WL 1632188, at *6 (E.D. Pa. Apr. 24, 2014) (finding recordings discussing the drug making process, the pricing of drugs, and a drug transaction as intrinsic to the charged offenses); *United States v. Davis*, Crim. No. 21-206, 2022 WL 2115846, at *2 (D. Minn. June 13, 2022) (admitting a voice message, video recordings, and photographs that show the defendant in

---

[4] Both the bricks found in the Kia and Deas's home had stamps that Deas and the CS discuss in the Recorded Conversations, including "Amber Alert," "Bitcoin," and "The Flintstones."

the *months* prior to the charges offenses in the presence of narcotics, conducting drug transactions, and possessing large amounts of cash).

That the evidence is intrinsic does not automatically render it admissible as even "[i]ntrinsic evidence must be relevant under Federal Rules of Evidence 401[5] and 402[6], and its probative value must not be substantially outweighed 'by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.'" *United States v. Carothers*, Crim. No. 20-31-2, 2024 WL 4581643, at *6 (W.D. Pa. Oct. 25, 2024) (quoting Fed. R. Evid. 403).

The Recorded Conversations are, as the Government notes, "exceptionally probative" and highly relevant to the charged offenses. Reply at 3. They show Deas discussing his drug trade, his plans to load up on a large supply of narcotics to last him through the end of July, and certain stamps on the bricks he distributes.

Deas counters that even if the Recorded Conversations are probative, the prejudice of the recordings is "acute" for three reasons. *First*, because the Government "cherry-picked" eleven minutes from fifty minutes of recordings, which "distort[s] the context and amplifies incriminating remarks." Deas Opp'n at 3. *Second*, because "[j]urors will inevitably conclude Mr. Deas is a 'drug dealer' and convict on that basis, regardless of whether the Government has proven the July 11

---

[5] "Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action." Fed. R. Evid. 401.

[6] "Relevant evidence is admissible unless any of the following provides otherwise: the United States Constitution; a federal statute; these rules; or other rules prescribed by the Supreme Court. Irrelevant evidence is not admissible." Fed. R. Evid. 402.

8

charges beyond a reasonable doubt." *Id.* And *third*, Deas asserts there is no practical way to rebut "the insinuations left by the clips" should he not testify. *Id.*

While the Court recognizes that the Recorded Conversations may be prejudicial, evidence is excluded "only if its *unfairly* prejudicial effect substantially outweighs its probative value." *United States v. Cross*, 308 F.3d 308, 323 (3d Cir. 2002) (emphasis added). Thus, "even a large risk of unfair prejudice may be tolerable" "when the evidence sought to be admitted is highly probative." *Id.* All of Deas's arguments as to why he would be prejudiced by the recordings do not give rise to *unfair* prejudice, but rather, prejudice that jurors are allowed to draw from highly probative evidence. For instance, Deas claims these excerpts are "more prejudicial than presenting the unedited recordings." Deas Opp'n at 3. Deas cites no case to support the proposition that a Court should require full recordings because selected excerpts are unfairly prejudicial. If Deas is arguing that the Recorded Conversations should be played in full under a rule of completeness theory,[7] the Court rejects that notion because Deas has not shown that any parts of the CS's recordings that are omitted from the Recorded Conversations ought to be considered contemporaneously in fairness to Deas. In the event Deas is arguing just that the clips are unfairly prejudicial in violation of Rule 403, the Court again disagrees. As an initial matter, the Court does not find the content of the Recorded Conversations to be "the kind of highly reprehensible and offensive content that might lead a jury to convict because it thinks that the defendant is a bad

---

[7] Federal Rule of Evidence 106 provides that "[w]hen a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it." *United States v. Hoffecker*, 530 F.3d 137, 192 (3d Cir. 2008). "Additional portions of a recording may be played 'if it is necessary to (1) explain the admitted portion, (2) place the admitted portion in context, (3) avoid misleading the trier of fact, or (4) insure a fair and impartial understanding.'" *Id.* (quoting *United States v. Soures*, 736 F.2d 87, 91 (3d Cir. 1984)).

person and deserves punishment, regardless of whether the defendant committed the charged crime." *United States v. Cunningham*, 694 F.3d 372, 387 (3d Cir. 2012). Deas appears to contend that the Recorded Conversations are unfairly prejudicial because they amplify the most incriminating aspects of his conversations with the CS. In making this argument, Deas asks the Court to inject less prejudicial minutes of conversation for no reason other than to dilute the prejudice of Deas's own statements. The Court declines to do so.

Deas also asserts that the Recorded Conversations are unfairly prejudicial because Deas has no practical way to rebut the insinuations left by the clip aside from taking the stand. Deas Opp'n at 3. Again, Deas cites no authority to support his position that evidence ought to be excluded when its highly probative nature puts pressure on the defendant to testify. "Rule 403 'does not offer protection against evidence that is merely prejudicial, in the sense of being detrimental to a party's case. Rather, the rule only protects against evidence that is unfairly prejudicial.'" *United States v. Bowers*, Crim. No. 18-292, 2023 WL 3688250, at *1 (W.D. Pa. May 26, 2023) (quoting *Carter v. Hewitt*, 617 F.3d 961, 972 (3d Cir. 1980)). For that reason, while "'any evidence suggesting guilt'"—here, the Recorded Conversations—is inherently "'prejudicial,' a court is only required to exclude evidence that would 'persuade by illegitimate means.'" *United States v. Nesbitt*, 57 F. App'x 40, 44 (3d Cir. 2002) (quoting *United States v. Blyden*, 964 F.2d 1375, 1378 (3d Cir. 1992)).

Having found that the Recorded Conversations are intrinsic to the Indictment,[8] that they are relevant to proving the Government's case-in-chief, and that the unfair prejudice associated

---

[8] The Court recognizes there is a small but highly unlikely chance that the large supply of narcotics that Deas mentions in the Recorded Conversations he would obtain to last him through the end of July are not the large supply of narcotics found in his home in the middle of July. In that event, the Recorded Conversations would be extrinsic to the charged offenses and therefore subject to a Rule 404(b) analysis.

10

with the Recorded Conversations does not substantially outweigh their probative value, the Court will **GRANT** the Government's motion to admit the Recorded Conversations at trial.[9]

---

Under Rule 404(b), "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). However, such evidence may be used in a criminal case for another purpose, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). Courts employ a four-part test for admission of Rule 404(b) evidence: (1) the evidence must have a proper purpose; (2) it must be relevant; (3) its probative value must not be substantially outweigh by its potential for unfair prejudice; and (4) the Court must charge the jury to consider the evidence only for the limited purposes for which it is admitted. *Huddleston v. United States*, 485 U.S. 681, 691-92 (1988).

The Government argues that the Recorded Statements are admissible to prove Deas's knowledge, intent, plan, and absence of mistake. Mot. at 13. The Court agrees. For example, Deas's statements in the Recorded Conversations—during which he discusses specific drug stamps and placing an order large enough to last him through the end of July—are highly probative of his knowledge of and intent to distribute the drugs bearing the same stamps found in his home and in the Kia in July. Mot. at 14 (citing *United States v. Davis*, Crim. No. 14-271, 2016 WL 3406056, *3-4 (W.D. Pa. June 21, 2016) where the court admitted evidence that defendant previously possessed heroin in packaging with a distinctive stamp to show defendant's opportunity, intent, and identity in a separate trial for distributing heroin in packaging with the same distinctive stamp).

The Court is not convinced by Deas's argument that because the Recorded Conversations *could* lead to the jury to draw a non-propensity inference, that they should be excluded. Deas misstates the Rule 404(b) test; evidence is not excluded when a jury may draw a propensity inference. Instead, evidence is admissible when "there is some—*any*—proper non-propensity purpose." Reply at 2 (citing Fed. R. Evid. 404(b)(2)). The fact a jury might draw an impermissible inference does not render the Recorded Conversations inadmissible given the Government has put forth numerous non-propensity inferences, which is the key question under Rule 404(b).

[9] "[T]he only consequences of labeling evidence 'intrinsic' are to relieve the prosecution of Rule 404(b)'s notice requirement and the court of its obligation to give an appropriate limiting instruction upon defense counsel's request." *Green*, 617 F.3d at 247 (citation omitted). Because the Court finds that the Recorded Conversations are intrinsic to the Indictment, the Court need not provide a limiting instruction as to Deas. However, because the Government seeks to only admit the Recorded Conversations in its case-in-chief against Deas, the Court will instruct the jury "to disregard Deas's recorded statements in the jury's deliberations concerning Williams's guilt." Mot. at 8 n.2 (citing Third Circuit Model Jury Instructions, Criminal Sec. 4.33 (Prior Statement of Non-Testifying Defendant in Multi-Defendant Trial)).

B.   **Authentication of the Recorded Conversations**

The Government next asks the Court for a pretrial ruling that law enforcement officers, instead of the CS, may authenticate the Recorded Conversations at trial. Mot. at 18.

There are two sources that courts consider when determining the authenticity and accuracy of recordings: Federal Rule of Evidence 901 and *United States v. Starks*, 515 F.2d 112 (3d Cir. 1975). In *Starks*, the Third Circuit recognized that "[t]ape recordings are not readily identifiable as the original version" because they "are peculiarly susceptible of alteration, tampering, and selective editing." 515 F.2d 121. Therefore, "[w]hen a colorable attack is made as to a tape's authenticity and accuracy, the burden on those issues shifts to the party offering the tape, and the better rule requires that party to prove its chain of custody." *Id.* at 122. Once the burden shifts to the Government, it must "produce clear and convincing evidence of authenticity and accuracy as a foundation for the admission of such recordings." *Id.* at 121 (quotation omitted). *Starks* outlined seven factors for establishing this foundation:

> (1) That the recording device was capable of taking the conversation now offered in evidence.
> (2) That the operator of the device was competent to operate the device.
> (3) That the recording is authentic and correct.
> (4) That changes, additions or deletions have not been made in the recording.
> (5) That the recording had been preserved in a manner that is shown to the court.
> (6) That the speakers are identified.
> (7) That the conversation elicited was made voluntarily and in good faith, without any kind of inducement.

*Id.* at 121 n.11.

Rule 901 was enacted shortly after *Starks* and provides that "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). "Questions of authentication under Rule 901 are treated 'as matters of conditional relevance according to the standards of Rule 104(b),' which can be satisfied under the 'preponderance of the

12

evidence standard.'" *United States v. Dubose*, 639 F. Supp. 3d 503, 511 (E.D. Pa. 2022) (quoting *United States v. Browne*, 834 F.3d 403, 433-34 (3d Cir. 2016)). Rule 901 allows any person to identify a "voice—whether heard firsthand or through mechanical or electronic transmission or recording—based on hearing the voice at any time under circumstances that connect it with the alleged speaker." Fed. R. Evid. 901(a)(5). "Video evidence may be properly authenticated if a witness with knowledge of the video testifies that the video is what its proponent claims it to be." *United States v. Louis*, Crim. No. 11-23, 2011 WL 6255152, at *4 (D.V.I. Dec. 13, 2011) (citing *United States v. Goldin*, 311 F.3d 191, 197 (3d Cir. 2002)). "The burden of proof applicable to identifying a speaker on a recording is relatively minimal." *United States v. Yilmaz*, Crim. No. 22-339-4, 2023 WL 6164558, at *2 (E.D. Pa. Sept. 21, 2023) (citation modified).

The Third Circuit has not decided whether Rule 901 supersedes *Starks*. *See United States v. Rodriguez-Mendez*, Crim. No. 22-1422, 2023 WL 3378005, at *5 (3d Cir. May 11, 2023); *see also United States v. Toler*, 444 F. App'x 561, 564 n.1 (3d Cir. 2011) ("acknowledg[ing] the Government's argument that *Starks* was abrogated by Federal Rule of Evidence 901(a), which requires a lesser showing to authenticate evidence" but declining to "comment on the relationship between *Starks* and Rule 901"). Generally speaking, "[d]ecisions in [the Third Circuit] 'read *Starks* and Rule 901 together to require the Government to identify a speaker on a recording by a preponderance of the evidence standard.'" *United States v. Mack*, Crim. No. 19-692, 2020 WL 5569784, at *2 (E.D. Pa. Sept. 17, 2020) (quoting *United States. v. Estevez*, Crim. No. 13-20, 2013 WL 3196421, at *2 (E.D. Pa. June 25, 2013)).

To authenticate the Recorded Conversations under either standard, the Government:

13

>anticipates introducing law enforcement witnesses at trial competent to testify to each of the factors identified by the Third Circuit which, collectively, were sufficient to authenticate the audiovisual Recorded Conversations. These witnesses will respectively testify that: (i) they met with the CS immediately prior to the time of the respective recording and provided the CS the recording device, and procured the recording device immediately after the period that was recorded; (ii) the CS was competent to operate the device and voluntarily did so; (iii) the witness monitored the recording in real-time and that the recording accurately reflects the conversations between Deas and the CS; and (iv) the witness is familiar with the CS's voice and likeness.

Mot. at 20.

Deas does not object to the Government's Motion, which the Court construes as Deas conceding the authenticity of the Recorded Conversations. Nevertheless, the Court finds that had Deas opposed, any opposition would be futile as the Government has met its burden under either *Starks* or Rule 901. *See Rodriguez-Mendez*, 2023 WL 3378005, at *5-6 (affirming the admission of recordings between a defendant and an informant where two law enforcement officers testified to, among other things: the identity of the voices in the recording, that law enforcement had directed the controlled buys between the informant and the defendant, that the recordings accurately captured the conversations heard live during the controlled buys, and that the officer saw the informant and defendant together around the time of the recordings). The Government's anticipated testimony from law enforcement witnesses will adequately provide a foundation upon which the authenticity of the Recorded Conversations can be verified. Therefore, the Court will **GRANT** the Government's Motion for the Recorded Conversations to be authenticated by law enforcement witnesses.

### C. Impeachment Under Fed. R. Evid. 609

Finally, the Government argues that if Williams testifies at trial, it should be allowed to impeach his credibility by introducing a sanitized version "of his prior conviction for manufacturing, distribution, or possession with intent to distribute heroin in the third degree, in

14

violation of N.J.S.A. 2C:35-5(b)(3), for which he was sentenced to six years imprisonment with 42 months of parole ineligibility on October 28, 2016." Mot. at 21.

Federal Rule of Evidence 609 governs the admissibility of prior convictions for impeachment purposes. It is "premised on 'the common sense proposition that one who has transgressed society's norms by committing a felony is less likely than most to be deterred from lying under oath.'" *United States v. Murphy*, 172 F. App'x 461, 462 (3d Cir. 2006) (quoting *Walden v. Georgia Pac. Corp.*, 126 F.3d 506, 523 (3d Cir. 1997)). Where less than ten years have passed since a witness was released from confinement on a conviction—as is the case here—Rule 609(a)(1)(b) provides that: "for a crime that . . . was punishable by death or by imprisonment for more than one year, the evidence . . . must be admitted in a criminal case in which the witness is a defendant, if the probative value of the evidence outweighs its prejudicial effect to that defendant."

*United States v. Caldwell* established a four-factor test for courts to use when weighing the probative value of a prior conviction against its prejudicial effect to the defendant: (i) the kind of crime involved; (ii) when the conviction occurred; (iii) the importance of the defendant's testimony to the case; and (iv) the importance of the defendant's credibility. 760 F.3d 267, 286 (3d Cir. 2014). "The Government bears the burden of demonstrating the probative value of the prior conviction outweighs its prejudicial effect." *United States v. Wilson*, Crim. No. 15-94, 2016 WL 2996900, *2 (D.N.J. May 23, 2016).

Here, the first factor—the kind of crime involved—at first appears to cut both ways. Drug convictions, while not necessarily "*crimen falsi*," are often considered to "involve a great deal of secrecy and lying," and therefore, are typically admissible under Rule 609. *Murphy*, 172 F. App'x at 463; *see also United States v. Barr*, Crim. No. 14-592, 2015 WL 6870062, at *2 (D.N.J. Nov. 6, 2015) (explaining that "narcotics dealing tends to involve deliberation, secrecy, and

15

dissimulation"). However, other courts have departed from the default assumption that all drug crimes, regardless of the underlying facts, are probative of a defendant's credibility. *See United States v. Bennett*, Crim. No. 21-15, 2023 WL 6810439, at *2 (W.D. Pa. Oct. 15, 2023) ("Defendant was charged and convicted of Possession With Intent to Deliver. . . . Defendant also correctly states that these non-violent crimes are not crimes of dishonesty or deceit, and therefore have low impeachment value."); *United States v. Bernard*, Crim, No. 20-208, 2021 WL 3077556, at *2 (E.D. Pa. July 21, 2021) (finding that a prior drug offense had low probative value for establishing the defendant's character for truthfulness). As one district court in this Circuit explained:

> After reviewing these conflicting decisions on the probative value of a prior felony drug conviction on a defendant's character for truthfulness, it appears incongruent to state as a blanket rule that prior felony drug convictions lacking any elements or circumstances involving dishonesty or false statements are always probative to a defendant's character for truthfulness simply because Rule 609(a)(1)(B) pertains to a proper purpose: impeaching a defendant's credibility should they testify at trial . . . . Adopting this notion places all drug dealers into the same box, regardless of the conduct they engaged in which led to the prior felony drug conviction. . . . Therefore, without more information about the circumstances surrounding his prior felony drug convictions, the Court concludes that these convictions have little to no relevance to his character for truthfulness.

*United States v. Gillard*, Crim. No. 23-26, 2024 WL 247054, at *11 (E.D. Pa. Jan. 23, 2024) (citations omitted). For this reason, courts have relied upon the facts and circumstances of the prior conviction to determine whether it is probative of a defendant's credibility. *See United States v. Mullins*, Crim. No. 18-238, 2019 U.S. Dist. LEXIS 61318 at *6 (E.D. Pa. Apr. 5, 2019) (citing *United States v. Womack*, Crim. No. 97-72, 1998 WL 24355 at *1 (D. Del. Jan. 12, 1998) which explained that "some drug offenses are generally more covert or deceptive" than others and referring to a "spectrum" of crimes with differing impeachment value); *United States v. Hayes*, 553 F.2d 824, 828 (2d Cir. 1977) (distinguishing between narcotics smuggling and possession because the former has more probative value as to credibility and veracity).

16

In its Motion, the Government provides scant context regarding Williams's prior conviction "for manufacturing, distribution, or possession with intent to distribute heroin in the third degree, in violation of N.J.S.A. 2C:35-5(b)(3), for which he was sentenced to six years imprisonment with 42 months of parole ineligibility on October 28, 2016." Mot. at 21. While the length of Williams's sentence suggests a serious offense, without more information as to the nature and circumstances of the prior conviction, the Court cannot determine exactly how probative it is of Williams's character beyond the general notion that any felony conviction is probative of an individual's credibility. *See Walden*, 126 F.3d at 523. The Government does not, for example, "argue that [Williams] was involved in the sort of large-scale drug conspiracy that might require deception. Thus, while a felony conviction has some inherent impeachment value . . . the connection between this drug conviction and [Williams's] likelihood of testifying truthfully is attenuated." *Bernard*, 2021 WL 3077556, at *2 (citation modified). Here, the Court finds it hard to definitively say Williams's prior conviction has meaningful impeachment value given the lack of facts before the Court. *See United States v. Church*, Crim. No. 14-323-14, 2016 WL 613185, at *1 (E.D. Pa. Feb. 16, 2016).

But aside from whether the prior conviction is actually probative of Williams's credibility, the Court must also consider the prior conviction's similarity to the charged crime. *Caldwell*, 760 F.3d at 286. Here, the prior conviction for drug distribution is very similar to the charged offense. "With respect to the similarity of the crime to the offense charged, the balance tilts further toward exclusion as the offered impeachment evidence becomes more similar to the crime for which the defendant is being tried." *Id.* "[P]rior convictions for the same or similar crimes are admitted sparingly," *id.* (quoting Weinstein's Federal Evidence § 609.05[3][d]), because "the prejudicial effect (suggesting a propensity to commit the crime) of a prior conviction admitted for

17

impeachment may well outweigh its probative value," *United States v. Cooper*, Crim. No. 19-1, 2021 WL 3732789, at *3 (E.D. Pa. Aug. 24, 2021) (citation modified). This first factor "carries great weight" when the prior conviction is similar to the charged offense, and courts have excluded prior convictions given the great risk that a jury will draw an improper inference. *Church*, 2016 WL 613185, at *2.

The Government, recognizing that Williams's prior conviction is similar to the charged conduct, argues that it still has probative value. Mot. at 23. And to limit the prejudicial impact of prior conviction, it has proposed "sanitizing" it by solely identifying the prior conviction as a third-degree offense in the State of New Jersey, the date of the conviction, and the resulting sentence. *Id.* Williams does not counter the Government's arguments but agrees that if the Court admits the prior conviction, it should "be sanitized to only include the degree of the offense, date of conviction and sentence imposed." Williams Opp'n at 2. The Government's proposal is not a panacea. When presented with a proposed sanitized conviction, another court in this Circuit persuasively explained:

> While this proposal may reduce possible prejudice, it does not increase the probative value of [Williams's] prior felony conviction[] as to his character for truthfulness. Instead, "the probative value of a prior felony conviction will be ***diminished*** where the jury is not provided information about the prior conviction that would help in evaluating the extent to which the offense reflects on the defendant's veracity as a trial witness." *Caldwell*, 760 F.3d at 287 n.14 (emphasis added). This is because "[t]here are many types of felonies, and not all felony convictions strongly support the inference that the defendant is untrustworthy." *Id.* Accordingly, the Government's proposed approach to sanitize [Williams's] prior convictions does not cause the first [] factor to weigh in favor of admitting the[] prior felony conviction[] under Rule 609(a)(1)(B).

*Gillard*, 2024 WL 247054, at *12. Thus, the first factor weighs against admission of the prior conviction.

18

The second factor—the age of the prior conviction—weighs in favor of admission. The probative value of even an older conviction "may remain undiminished if the defendant . . . has multiple intervening convictions, both of which could suggest his character has not improved." *Caldwell*, 760 F.3d at 287. Williams was convicted in March 2016 and sentenced in October 2016 to six years' incarceration. Mot. at 24. He was then released from custody in October 2018, but the State revoked his parole in February 2020—approximately 28 months before the commission of the charged conduct. *Id.* Williams's conduct suggests that his "character has not improved," and therefore, his prior conviction maintains whatever probative value it has. *See Caldwell*, 760 F.3d at 287.

"The third and fourth factors are interrelated, and are somewhat in tension." *Barr*, 2015 WL 6870062, at *3 (citing *Caldwell*, 760 F.3d at 288 n.15). "If the defendant himself is the only relevant fact witness for the defense, his testimony must obviously be considered critical. That very circumstance, however, also raises the ante as to his credibility." *Id.* The Government anticipates that, should Williams testify, he would likely "give an exculpatory version of events at odds with the Government's evidence and/or arguments." Mot. at 25. While "[t]he tactical need for the accused to testify on his or her own behalf may militate against use of impeaching convictions" because a court's admission of a prior conviction for impeachment purposes prevents the accused from testifying, *Caldwell*, 760 F.3d at 287, "the defendant's testimony would set up a credibility contest between himself and [law enforcement]," *United States v. Figueroa*, Crim. No. 15-98, 2016 WL 126369, at *4 (D.N.J. Jan. 11, 2016). "[I]f the trial is to be a swearing contest, then the jury must be given the tools to do its fact-finding job." *Id.* at *4 (citing *United States v. Johnson*, 302 F.3d 139, 152 (3d Cir. 2002) ("Credibility was a major issue at trial because

[defendant]'s defense depended on the jury believing his story rather than [prosecution]'s, and evidence of a felony conviction is probative of credibility.")).

As noted above, Williams does not oppose the merits of the Government's arguments but instead asks the Court to "reserve" on issuing a ruling on whether he may be impeached with a prior conviction of his "until such time that it becomes relevant." Williams's Opp'n at 2. According to Williams, this would "allow for a more robust and complete record." *Id.*

While courts routinely issue decisions on pretrial motions to admit evidence under Rule 609, *see, e.g.*, *Figueroa*, 2016 WL 126369, at *4, in this context, the Court finds it appropriate to defer its decision on this issue until after it becomes clear whether: (1) Williams intends to testify; (2) whether he is the only relevant fact witness in his defense; and (3) how critical his credibility is to his defense. *See Barr*, 2015 WL 6870062, at *3. Accordingly, although the Court is inclined to deny the Government's request to admit Williams's prior conviction based on the record before the Court, the Court will **DEFER** its decision until these other related issues are crystallized.

### III.     CONCLUSION

For the reasons set forth above, the Court will **GRANT in part** and **DEFER in part** its decision on the Government's Motion. An appropriate Order accompanies this Opinion.

October 22, 2025

Evelyn Padin, U.S.D.J.